# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
November 4, 2024

Lyle W. Cayce
Clerk

No. 23-70008

Cedric Allen Ricks,

*Petitioner—Appellant*,

*versus*

Bobby Lumpkin, *Director, Texas Department of Criminal Justice, Correctional Institutions Division*,

*Respondent—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:20-CV-1299

Before Jones, Higginson, and Ho, *Circuit Judges*.

James C. Ho, *Circuit Judge*:

Cedric Allen Ricks was convicted in Texas state court of capital murder and sentenced to death for murdering his girlfriend and her eight-year-old son. Following the denial of his direct appeal and state habeas petition, Ricks filed this habeas petition in federal district court. The district court denied all claims. It also denied a certificate of appealability.

Ricks now asks our court for a COA on several of his claims. We deny the motion for a COA.

No. 23-70008

* * *

We may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For claims decided on procedural grounds, the applicant must demonstrate that reasonable jurists would find debatable "whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For claims decided on the merits, the applicant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*

For claims that have been decided by the state court on the merits, we must apply the standards of review in the Antiterrorism and Effective Death Penalty Act (AEDPA). That is, "we may not issue a COA unless reasonable jurists could debate that the state court's decision was either contrary to, or involved an unreasonable application of, clearly established Federal law, or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Harper v. Lumpkin*, 64 F.4th 684, 690 (5th Cir. 2023). Otherwise, we review de novo. *Nelson v. Davis*, 952 F.3d 651, 658 (5th Cir. 2020).

First, Ricks raises a *Batson* claim, arguing that the prosecution discriminated against two prospective black jurors. Specifically, he argues that the prosecution struck two black jurors because of their race, and that these jurors were subject to disparate questioning. The district court denied the claim on the merits. It found that Ricks failed to establish a prima facie case of discriminatory treatment. While the prosecution struck two prospective black jurors, it also accepted two black jurors as venire members. The district court also found the prosecution's race-neutral justifications for striking the two jurors as credible and supported by the record. *See Rhoades v. Davis*, 914

2

No. 23-70008

F.3d 357, 382–83 (5th Cir. 2019).  The court also found no pattern of racially disparate questioning.  Furthermore, the notation of racial identity in the prosecution's jury selection notes does not, without more, constitute racial discrimination.  *See Broadnax v. Lumpkin*, 987 F.3d 400, 410 (5th Cir. 2021) (noting that a spreadsheet noting the ethnicity and gender of jury members is not alone a "smoking gun" that can render the racially neutral justifications as pretextual).

Because the district court's determinations are consistent with our precedent, and because a trial court's denial of a *Batson* claim is entitled to great deference, *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam), we conclude that reasonable jurists would not likely find the assessment debatable or wrong.  No COA will issue on this claim.

Next, Ricks raises a claim of ineffective assistance of appellate counsel for failing to raise the *Batson* claim on appeal.  This claim was denied on the merits by the state court.  Therefore, we must deny the request for COA on this claim "unless reasonable jurists could debate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law."  *Harper*, 64 F.4th at 692 (cleaned up).  To establish ineffective assistance of appellate counsel, Ricks must show that the counsel's performance was deficient, and that the performance prejudiced his defense.  *Strickland v. Washington*, 466 U.S. 668, 689–94 (1984).  Because we find his *Batson* claim meritless as discussed above, his appellate counsel's failure to raise the claim on appeal was neither unreasonable nor prejudicial.

Third, Ricks purports that his due process rights were violated when the jury saw him wearing shackles.  The district court rejected Ricks' claim for two central reasons:  Ricks exposed his shackles to the jury on his own, and Ricks failed to provide any evidence showing that the exposure of the shackles or the trial court's actions amounted to a "substantial and injurious

effect or influence in determining the jury's verdict." *Hatten v. Quarterman*, 570 F.3d 595, 604 (5th Cir. 2009) (citation omitted).

We find this claim procedurally defaulted. A federal court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). Ricks did not raise this claim in his direct appeal. Accordingly, the Texas Court of Criminal Appeals held the claim procedurally barred in his state habeas petition. *See Ex Parte Ricks*, 2020 WL 67777958, at *1 (Tex. Crim. App. 2020). *See also Ex Parte Nelson*, 137 S.W.3d 666, 667 (Tex. Crim. App. 2004) ("We have said countless times that habeas corpus cannot be used as a substitute for appeal, and that it may not be used to bring claims that could have been brought on appeal."); *Busby v. Dretke*, 359 F.3d 708, 719 (5th Cir. 2004) (recognizing the direct appeal rule as an independent state law ground that bars habeas review). Because his due process claim for shackling is procedurally defaulted, and he has not shown cause or prejudice to overcome it, no COA will issue on this claim.

Our dissenting colleague would grant a COA on the shackling claim. He contends that we should not deny the COA based on procedural default, because the district court reached the merits of this claim, without addressing procedural default. But we are aware of no legal basis for granting a COA on a claim that is destined to fail due to procedural default.

Lastly, Ricks also brings an ineffective assistance of counsel claim against his trial counsel for failure to object to shackling and failure to raise peremptory challenges to the State's strikes against nine female venire members.

We reject both arguments. First, we find that trial counsel's decision to refrain from objecting to the shackling was not unreasonable. As the state

habeas court concluded, the omission was a strategic choice to not draw further attention to the shackles.  Second, we find trial counsel's failure to object to the State's strikes against the female venire members to be reasonable.  Although the State used nine peremptory strikes on female venire members, it offered gender-neutral explanations for its challenges. The State also accepted nine other female members.

*  *  *

We deny the motion for a COA.

No. 23-70008

Stephen A. Higginson, *concurring in part, dissenting in part*:

I agree with the majority's decision to deny a certificate of appealability on the *Batson*-related claims and the ineffective-assistance-of-counsel claims. I write separately because I would grant a COA on Ricks's due process claim, which arises from his briefly visible shackling in front of the jury during the sentencing phase of trial.

The majority concludes that this claim is procedurally defaulted, relying, in part, upon the CCA's holding that Ricks should have brought this claim on direct appeal. However, the federal district court, whose opinion we are reviewing, did not dismiss the claim on procedural grounds, but instead resolved the claim on the merits. We are tasked with addressing whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). We are not tasked with assessing, in the first instance and on the limited briefing before us, whether there exist other independent grounds on which the district court could have denied Ricks's claim, as a basis for us to deny a COA.

Returning to our review of the district court's order, reasonable jurists could disagree as to the lower court's assessment of the merits of Ricks's due process claim. The Supreme Court has held that visible shacking of a defendant during the punishment stage of trial may violate the Fifth and Fourteenth Amendment:

> The appearance of the offender during the penalty phase in shackles, however, almost inevitably implies to a jury, as a matter of common sense, that court authorities consider the offender a danger to the community—often a statutory aggravator and nearly always a relevant factor in jury decisionmaking, even where the State does not specifically argue the point.

6

*Deck v. Missouri*, 544 U.S. 622, 633 (2005). Post-*Deck*, our court has reaffirmed its prior narrower holding that "brief and inadvertent exposure to jurors of defendants in handcuffs is not so inherently prejudicial as to require a mistrial; in such cases, defendants bear the burden of affirmatively demonstrating prejudice" *United States v. Turner*, 674 F.3d 420, 435 (5th Cir. 2012) (internal quotation marks and citations omitted).

Here, the district court determined that Ricks exposed the shackles on his own accord and therefore was not entitled to relief under the invited error doctrine. When Ricks concluded his testimony during the punishment stage, the state trial court judge directed, "you may step down, sir," which is what Ricks did. From that interaction, the district court concluded that Ricks chose to stand up and to return to the defense table of his own volition before any party could object. While Ricks did step down from the witness chair of his own physical volition, he did so in response to an instruction from the trial judge. Whether that behavior constitutes invited error that precludes relief is one that reasonable jurists could surely debate.

In the alternative, the district court concluded that, even if Ricks had not invited error, Ricks still failed to show that the shackles had "a substantial and injurious effect or influence in determining the jury's verdict." *Hatten v. Quarterman*, 570 F.3d 595, 604 (5th Cir. 2009). Reasonable jurists could also conclude that this assessment is debatable. While "brief and inadvertent exposure" to jurors of a defendant in handcuffs does not mandate a mistrial, *Turner*, 674 F.3d at 435, whether such prejudice occurred here warrants further exploration, see *Slack*, 529 U.S. at 484. While the jury may have seen Ricks in shackles only briefly, the State affirmatively chose to remind the jury of what they saw during its closing argument of the penalty stage:

No. 23-70008

> The answer to Special Issue Number 1, undoubtedly, should be yes. This man is a continuing threat wherever he is to whoever he is around. . . .
>
> You saw him walk back to counsel table this morning with shackles on. Everywhere he goes in the Tarrant County Jail, he's shackled and handcuffed. He's not going to be like that in the penitentiary. It's a different setting. It's completely different.

The State directly tied Ricks' visible shackling to why the jury should find in the affirmative to Special Issue Number 1, which asked "whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." Tex. Code Crim. Proc. art. 37.071, §2(b)(1). In *Deck*, the Supreme Court stated that visible shackling during the punishment stage "implies" to a jury that the defendant is a continuing threat to the community, 544 U.S. at 633; here, the State went even further and explicitly made that argument to the jury.

With this backdrop, reasonable jurists could conclude that Ricks's visible shackling—albeit only briefly visible—was inherently prejudicial or that Ricks met his burden in demonstrating it had a "substantial and injurious effect" on the jury's verdict. Because "reasonable jurists would find the district court's assessment of the constitutional claims debatable," *Slack*, 529 U.S. at 484, I dissent.

8